[Civ. No. 875.   Second Appellate District.—October 16, 1911.]

N. G. PEHL, Appellant, v. C. D. FANTON, Respondent.

ACTION FOR BROKER'S COMMISSIONS—FINDING PURCHASER FOR LAND—TRIAL OF ISSUE—FINDINGS—WAIVER OF OBJECTION UPON APPEAL.—Upon the trial of an action to recover broker's commissions for finding a purchaser for the land of the defendant, where both the court and the parties regarded the question whether or not the plaintiff had procured a purchaser for the property in accordance with the contract authorizing the sale as the chief issue involved, and without objection both plaintiff and defendant introduced evidence on that question, and the court made findings for the defendant and rendered judgment in his favor thereon, the plaintiff cannot object, upon appeal, for the first time, that there was no such issue to be tried.

ID.—GENERAL RULE AS TO FINDING PURCHASER—READINESS TO COMPLY WITH EXPRESSED TERMS.—As a general rule of law, where a broker employed to negotiate a sale of property has found a purchaser ready, able and willing to purchase upon the vendor's expressed terms, the broker's right to recover commissions does not depend upon the final consummation of the sale by the vendor. In such case, the agent has done all that he can do, and if the vendor under such circumstances refuses to complete the sale, he nevertheless will be compelled to pay the agent his commissions.

ID.—PURCHASER UNWILLING TO COMPLY WITH EXPRESSED TERMS—HALF CASH AND HALF MORTGAGE—SMALL DEPOSIT ON TIME—FORFEITURE

—COMMISSIONS NOT EARNED.—Where the broker was expressly authorized solely to find a purchaser for the expressed sum of $11,000, payable half in cash and half in one year, secured by mortgage on the property, and he found a purchaser willing only to make a deposit of $1,000, to be forfeited to the owner if the purchaser does not, within fifteen days, deposit the remaining $4,500 in cash, in which case the deposit is to be added thereto, and execute the note and mortgage, upon the purchaser receiving a certificate of one of two named title companies certifying to a satisfactory condition of the title, the broker had no authority to agree to such terms for the owner, and in the absence of an express acceptance thereof by the owner, the broker has not earned his commissions, and cannot recover the same.

ID.—SALE FOR CASH NOT INCLUSIVE OF CREDIT.—A sale for cash is one wherein the money is to be paid immediately upon the delivery of the property sold. Under the terms of the memorandum authorizing the sale to be made by the plaintiff, the defendant had the right to insist upon the payment of the entire $5,500 and delivery of an executed note and mortgage as proposed, immediately upon tender of a sufficient conveyance transferring a good title to the buyer. To postpone such payment for a period of fifteen days was not "cash" within the terms of the authority given to the plaintiff.

APPEAL from a judgment of the Superior Court of Riverside County, and from an order denying a new trial. F. E. Densmore, Judge.

The facts are stated in the opinion of the court.

Chas. P. Huey, and Walter C. Davison, for Appellant.

G. R. Freeman, for Respondent.

SHAW, J.—Plaintiff, a real estate broker, brought this action to recover from defendant $300 for commissions alleged to be due him for obtaining a purchaser for certain real estate owned by defendant. Judgment was rendered for defendant, from which, and an order denying his motion for a new trial, plaintiff prosecutes this appeal.

As shown by the record, defendant on February 5, 1907, by a memorandum in writing, authorized plaintiff to sell the property therein described as lot No. 406 of Ontario Colony Lands, for the price of $11,000, payable one-half in cash and the balance in one year, with interest thereon at the rate of

seven per cent per annum, payment thereof to be secured by a mortgage on the property sold, which agreement contained the following provision: "If sale is made, I hereby agree to execute and deliver a good and acceptable conveyance of said property, and to pay a commission of 5 per cent on the first $1000 or less, and 2½ per cent on all over that amount, out of the first payment." No time was specified when plaintiff's authority to sell should terminate, and the authority given was at no time revoked by defendant. In his complaint plaintiff alleged that on March 6, 1908, he procured a buyer who was then and there ready, willing and able to purchase and pay for the property in conformity with the terms and conditions set forth in said contract, and notified defendant to that effect, but defendant refused to consummate the sale. This allegation (other than that defendant refused to make the sale) was denied by the answer, which also, in addition to its denials, set up certain affirmative matter, beginning on line 11, page 3, of the answer, and ending on line 18, page 4, thereof. Plaintiff moved that all of said matter, specifying it by line and page, be stricken from the answer as irrelevant and redundant. This motion was by the court granted, but instead of limiting the order as made to that part of the answer to which the motion was directed, the court, as shown by the minute entry, ordered stricken out certain designated pages of the answer, which included the allegations of denial, leaving as the only issue to be tried under the pleadings certain affirmative defenses, as to which the court found adversely to defendant. Notwithstanding the fact that it clearly appears the order of court was due to inadvertence and not responsive to the motion, counsel for appellant strenuously insists that this court should eliminate from consideration all issues other than those raised by the answer after the making of the said order as shown by the record, and thus considered, it is claimed that certain material findings in favor of defendant are not within the issues. It is apparent, however, that upon the trial of the cause both the court and the parties regarded the question whether or not plaintiff had, as alleged, procured a purchaser for the property, in accordance with the terms of the contract authorizing the sale, as the chief issue involved. Without objection, both plaintiff and defendant

introduced evidence touching the question, and the court made
its findings thereon.   If the plaintiff had desired to take ad-
vantage of such condition of the pleadings, he should not only
have refrained from introducing evidence .in support of the
allegation of his complaint which he now claims was not
denied, but should also have entered an objection to the de-
fendant introducing testimony thereon.   Having failed to do
so, and the parties and the. court having tried the case upon
the theory that such material issue was involved in the plead-
ings, appellant cannot in this court for the first time raise the
question that there was no such issue to be tried.   (*Flinn* v.
*Ferry,* 127 Cal. 648, [60 Pac. 434] ; *Barbour* v. *Flick,* 126 Cal.
628, [59 Pac. 122] ; *Murdock* v. *Clarke,* 90 Cal. 427, [27 Pac.
275] ; *Klopper* v. *Levy,* 98 Cal. 525, [33 Pac. 444].)

In support of plaintiff's allegation that he had procured
one ready, able and willing to purchase the property in ac-
cordance with the terms and conditions of the memorandum
authorizing the making of the sale, he introduced evidence
establishing the following facts: On March 6, 1908, thirteen
months after the date when plaintiff was so authorized to sell
the property, he procured one Henry S. Grunenwald to exe-
cute certain escrow instructions directed to the First National
Bank of Upland, California, wherein it was stated: "I here-
with hand you check for $1,000, and agree to deposit with you
$4,500 in cash on or before fifteen days from this date, and
agree within said fifteen days to execute and deliver to you
one promissory note and mortgage securing same on the prop-
erty described below, dated March 6, 1908, due one year after
date, with interest at 10 per cent per annum, with 3 per cent
rebate clause"; which note and mortgage was to be in favor
of defendant for the sum of $5,500, and the bank was in-
structed to deliver the $1,000, together with the mortgage
agreed to be executed and the $4,500 agreed to be deposited,
to defendant upon receipt of a deed for the property, accom-
panied by a certificate of title from the Pioneer Abstract and
Title Guaranty Company, or the Consolidated Abstract and
Title Company, showing title to be vested in defendant, free
of encumbrances, except taxes, etc.   It was further provided
in said escrow that, "in event you are unable to comply with
these instructions within fifteen days from the date hereof,

on account of my failure to comply with the terms herein stated, you are authorized to pay to the seller $1,000 as forfeit, and hold balance subject to my order," to all of which plaintiff assented in writing, signing the same "N. G. Pehl, agent." That at said time defendant was living near Corona, California, and plaintiff wired him from Upland, California, that he had sold the property in accordance with the terms of the contract, which telegram was followed by a letter to the same effect. The court made its findings in accordance with the facts thus established, except that the court erroneously found that, as a condition of sale, defendant was required to furnish certificates from two abstract companies certifying to the satisfactory condition of title, whereas the escrow contract required a certificate from either one of two such companies therein designated.

The law is well settled that where a broker is employed to negotiate a sale of property and has found a purchaser ready, able and willing to purchase upon the vendor's expressed terms, the broker's right to recover the agreed commission does not depend upon the final consummation of the sale by the vendor. "The contract on the part of the broker is complete when he delivers or tenders to the owner a valid written contract, containing the terms of sale agreed on, signed by a party able to comply therewith, or to answer in damages if he should fail to perform. . . . The necessity of a written contract of sale may be rendered unnecessary if the agent bring the vendor and vendee together, and the latter is able and willing, and offers to complete the contract, provided the vendor will make the conveyance. In such a case the agent has done all that he can do, and if the vendor, under such circumstances, refused to complete the sale, he, nevertheless, will be compelled to pay the agent his commissions, . . . whether the trade is finally consummated or not, because if the vendee refuses to take the property, the vendor holds the contract, which renders the former liable for all damages." (*Hayden* v. *Grillo,* 35 Mo. App. 647, cited with approval in *Gunn* v. *Bank of California,* 99 Cal. 353, [33 Pac. 1105].)

Plaintiff's right to recover is dependent upon whether or not the execution and delivery of the escrow contract, the substance of which is hereinabove stated, accompanied by his check for $1,000, to be applied as therein specified, constituted

either a sale of the property, or the procuring of a purchaser therefor, within the terms of the authorization given. Tested by the authorities, we are firmly convinced that it did not. At most, the escrow constituted a proposed purchase of an option on the part of Grunenwald to buy the property within fifteen days from the date of the escrow according to the terms of the memorandum given plaintiff authorizing him to make a sale, and in the event of Grunenwald's failure to exercise such option and complete the purchase on his part, the $1,000 was to be paid to defendant as forfeit money; otherwise, to be applied on the first payment of $5,500. Indeed, counsel for plaintiff admits as much, for he says, referring to Grunenwald's contract: "This agreement was placed in escrow, together with a $1,000 check, in the First National Bank of Upland, said $1,000 being forfeit money, in case said Grunenwald refused to buy the property," and again, that "defendant would receive $1,000 as forfeit money, then on deposit in the First National Bank of Upland, California," in case Grunenwald made default in paying the balance of $4,500 and causing the delivery of the note and mortgage for $5,500. It is not claimed that plaintiff at any time brought the parties together, or that defendant ever assented to the sale to Grunenwald. Conceding the latter was ready, willing and able to purchase upon the terms authorized by defendant, nevertheless, he signed no agreement or contract binding himself so to do. Had defendant accepted the offer of Grunenwald, obtained through plaintiff as broker, the latter would have been entitled to recover his commissions (*Sibbald* v. *Iron Co.*, 83 N. Y. 378, [38 Am. Rep. 441]; *Gunn* v. *Bank of California*, 99 Cal. 353, [33 Pac. 1105]), but for a failure on the part of Grunenwald to execute the note and mortgage and make the further payment provided within the time specified, defendant's only remedy would have been the enforcement of the provision for the forfeiture of the deposit of $1,000. "This," says counsel for plaintiff, "was ample deposit to protect the owner, had the purchaser refused to perform further." The record being silent upon the subject of the sufficiency of the deposit for such purpose, this court cannot, as a matter of law, so hold; suffice it to say the plaintiff had no authority to make such contract for the defendant. More-

over, one-half of the sale price was payable in cash, while Grunenwald's proposition contemplated an extension of time of fifteen days within which to make payment of the $4,500. A sale for cash is one wherein the money is to be paid immediately upon the delivery of the property sold. (*Bliss* v. *Arnold,* 8 Vt. 252, [30 Am. Dec. 467] ; *Chapman* v. *Devereux,* 32 Vt. 616; Civ. Code, sec. 1784.)    Under the terms of the memorandum authorizng the sale to be made by plaintiff, defendant had the right to insist upon payment of the entire $5,500 and delivery of an executed note and mortgage immediately upon tender of a sufficient conveyance transferring good title to the buyer. · To postpone such payment for a period of fifteen days was not "cash," within the terms of the authority given plaintiff.

In view of the fact that plaintiff did not, as alleged in his complaint, procure a purchaser for the property within the terms upon which he was authorized to make the sale, it is unnecessary to discuss other alleged errors to which our attention is directed.    In no event, under the circumstances of this case, could the substantial rights of appellant be prejudiced by reason thereof.

The judgment and order are affirmed.

Allen, P. J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 15, 1911, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 15, 1911.